UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IAN STEWART, ET AL.,

                    Plaintiff,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, ET AL.

                    Defendant.

_____/

Case No. 13-11316

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [45]

## FACTUAL BACKGROUND

This case concerns a $299,250.00 mortgage on a property commonly known as 30092 Mayfair Drive, Farmington Hills, Michigan 48331 ("the Property").

On June 10, 2005, Plaintiffs received a Mortgage from Quantum Mortgage & Finance, LLC. The mortgage was recorded on August 9, 2005 in Oakland County. On June 14, 2005, Quantum Mortgage transferred its interest in the Stewart's loan to Flagstar, who then became their servicer. On June 24, 2005, Defendant Fannie Mae became the owner of the loan and Flagstar subsequently assigned the servicing of the mortgage to Defendant Nationstar Mortgage on September 30, 2009 and Plaintiffs were informed of this transfer by Nationstar by letter.

2:13-cv-11316-AJT-LJM   Doc # 56   Filed 09/30/15   Pg 2 of 17   Pg ID 1252

On October 17, 2011, Plaintiffs sent Nationstar Mortgage a letter entitled "Qualified Written Request." Plaintiffs' correspondence requested that they be considered for a loan modification and demanded information regarding securitization and the true owner of the loan. Nationstar Mortgage responded in November 2011, sending Plaintiffs documentation regarding the origination and servicing of the loan.

On February 9, 2012 Plaintiffs faxed another letter to Nationstar Mortgage. On March 12, 2012, Nationstar Mortgage responded and enclosed documentation regarding the originator, investor, and service of the loan as well as a detailed payment history.

Plaintiffs subsequently stopped submitting payments to Nationstar and defaulted on the loan. As a result, Nationstar commenced foreclosure proceedings pursuant to MCL § 600.3201 *et seq.* Nationstar sent notice to Plaintiffs pursuant to MCL § 600.3205a (Foreclosure of Mortgages by Advertisement, Notice to Buyer). Plaintiffs requested a meeting pursuant to MCL § 600.3205a. Nationstar sent Plaintiffs a package to complete as a prerequisite to scheduling a meeting. Plaintiffs never returned the package, nor provided the required documentation. After 60 days passed, Nationstar published a Notice of Foreclosure for four consecutive weeks in the Oakland County Legal News, commencing February 28,

2013.  Nationstar posted a Notice of Foreclosure on the Property on March 2, 2013.

Plaintiffs' Complaint [1] was filed on March 25, 2013.  The mortgage was foreclosed and the Sheriff's sale was held on April 9, 2013.  Nationstar Mortgage purchased the Property for $202,243.71.   The six-month statutory redemption period expired October 9, 2013. On March 25, 2014, Defendant's motion to dismiss [14] was granted in part and denied in part by the Court. Only claims IV and VIII, relating to the Real Estate Settlement Procedure Act) [hereafter RESPA], 12 USC §§ 2601, 2605(e) (1974), and claims VI and VII, relating to the Truth in Lending Act [hereafter TILA], 15 USC §§ 1601, 1641(f)(2) and 1641(g) (1968), remain before the Court. On February 5, 2015, Defendants filed a motion for summary judgment [45] of the remaining claims. Plaintiff's response [47] was filed on March 11, 2015, and Defendant's reply [52] was filed on March 24, 2015.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the burden of establishing that there are no genuine issues of material fact,

which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

## ANALYSIS

### I. Plaintiff's Request to Withdraw Admissions

In the response to Defendant's motion for summary judgment, Plaintiffs included in their statement of facts a section stating, for the first time, a request for withdrawal of their admissions. [47]. Plaintiffs never filed a motion requesting the Court's permission to withdraw their admissions under Fed. R. Civ. P. 36(b) and they present no reason for not filing a motion or alerting the Court about this issue before the Defendants filed their motion for summary judgment. In correspondence dated December 4, 2014, [45-15] Plaintiffs were alerted by Defendants that the deadline for admissions had passed, and yet failed to subsequently direct the Court's attention to the issue of withdrawal of their admissions until their response to Defendant's motion for summary judgment was filed on March 11, 2015, a time period of ninety-seven days.

In their response brief [47], the request to withdraw admissions cites cases where admissions were withdrawn because issues such as *pro se* Plaintiffs and withdrawing of counsel led Courts to grant a motion to withdraw. *See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Tripodi*, 913 F. Supp. 290, 294 (S.D.N.Y. 1996) (explaining *pro se* Plaintiff was a factor in decision to withdraw admissions); *United States v. Turk*, 139 F.R.D. 615, 616 (D. Md. 1991) (explaining *pro se* Plaintiff was a factor in decision to withdraw admissions); *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1314 (8th Cir. 1983) (citing attorney withdrawal due to a conflict of interest as a reason to withdraw admissions). In this case, neither of these circumstances are present and Plaintiff points to no other circumstances to explain their late response, which cuts against granting a withdrawal of admissions.

Considering these factors, the Court denies the informal request of the Plaintiffs to withdraw admissions. Parenthetically, it is noted that withdrawing Plaintiffs' admissions have no effect on the outcome of the order in this case. Defendants wrote their motion for summary judgment as if the admissions had been withdrawn and Plaintiffs fail to make any viable claim even if admissions are withdrawn.

## II.   Defendants Fannie Mae and Nationstar's Motion to for Summary Judgment [45]

Defendant Nationstar Mortgage is the servicer of Plaintiffs' loan and mortgagee of record. Nationstar Mortgage foreclosed on the Property by advertisement.

### a. Violations of RESPA: Count IV and Count VIII, § 2605(e)

Defendants argue that summary judgment is appropriate for claims IV and VIII, brought under the Real Estate Settlement Procedures Act (RESPA), because the undisputed facts of the case demonstrate that, if Plaintiffs' letters to Nationstar constituted qualified written requests (QWR) as defined under 12 U.S.C.A. § 2605(e)(1)(B), Nationstar's responses to the two QWRs were adequate under 12 U.S.C.A. § 2605(e)(2). Additionally, Defendants argue that Plaintiffs failed to adequately allege damages resulting from any violation of RESPA, further supporting an order of summary judgment in favor of Defendants on these claims.

Under RESPA, if a servicer of a mortgage receives a QWR relating to the servicing of a loan, they have five days in which to provide a written response acknowledging receipt of the letter, and then the servicer has thirty days, excluding legal public holidays, Saturdays, and Sundays, in which to respond to the QWR. 12 U.S.C.A. §§ 2605(e)(1)(A); 2605(e)(2). In order to qualify as a QWR, the letters must contain content that:

> **(i)** includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower,
> to the extent applicable, that the account is in error or provides
> sufficient detail to the servicer regarding other information sought by
> the borrower.  12 U.S.C.A. § 2605(e)(1)(B).

In addition, a QWR must request information that relates to the servicing of a loan

in order to trigger the legal obligation of the servicer to respond to the request for

information. 12 U.S.C.A. § 2605(e)(1)(A). "Servicing" is defined as relating to:

> receiving any scheduled periodic payments from a borrower pursuant to the
> terms of any loan…and making the payments of principal and interest and
> such other payments with respect to the amounts received from the borrower
> as may be required pursuant to the terms of the loan. 12 U.S.C.A. §
> 2605(i)(3).

Courts strictly enforce these statutory requirements and carefully parse the

language in each reported QWR to determine what requests are related to

servicing, and thus require a response from the servicer, and which requests are not

related to servicing, and thus incur no such obligation. *See e.g. Neroni v. Bank of

Am., N.A.*, No. 13-11823, 2013 WL 5671323, at *3 (E.D. Mich. Oct. 17, 2013)

reconsideration denied, No. 13-11823, 2013 WL 6283639 (E.D. Mich. Dec. 4,

2013); *Morton v. Bank of Am., N.A.*, No. 1:12-CV-511, 2013 WL 6491089, at *5

(W.D. Mich. Dec. 10, 2013).

Plaintiffs sent Nationstar two QWRs that are entered on the record, one on

October 17, 2011 the other on January 12, 2012. The record establishes that

Nationstar complied with the statutory requirements, insofar as it sent correspondence to Plaintiffs acknowledging receipt of the QWR, as well as a response within the statutory timeline. Therefore, the only material issue remaining is whether the responses were sufficient under the statutory requirements to address any servicing related inquiries that Plaintiffs had submitted in the QWRs.

It is undisputed that both QWRs contained some requests that related to servicing, as well as others that did not. In their first letter, Plaintiffs requested: information regarding loan modifications; alleged that they believed their loan payments not to have been properly credited, amortized and calculated; and requested the identity of the servicer of the mortgage and the owner of the mortgage and note, as well as written documentation establishing the ownership of the mortgage and note. [45-6]. Any requests seeking identification and information relating to the owner of the mortgage and note are not related to servicing, since the servicer "would not be involved with the profess of initially issuing a loan," and thus requests regarding information relating to the origin of the loan, or the identity of the owner of the mortgage have been held not to be a "servicing" request covered by the QWR obligations under RESPA. *Neroni v. Bank of Am., N.A.*, 2013 WL 5671323, at \*3. The second letter contained requests for information regarding the UP agreement; a certified copy of the note; a foreclosure

inquiry; questions about assignments of the loan; details as to why the loan modification was denied; and finally another request concerning accounting of the debt. [45-8].

The only requests in the letters that qualify as being related to "servicing" of the loan, and thus represent the entirety of the QWR that Nationstar was obligated to respond to, are the assertions that the mortgage payments had not been properly credited, amortized and calculated, as these plainly relate to the payment of the loan.

In addition, to qualify as a QWR, the servicing request must also include a statement of belief as to the reasons for the request, as well as provide sufficient detail to the servicer, so it can find the appropriate information requested by the borrower. 12 U.S.C.A. § 2605(e)(1)(B). In their first letter, Plaintiffs do present a statement of belief supporting their request, pointing to a review of their account, mortgage history, and prior experience applying for a loan modification, that led to their belief that that they had been overcharged.

What is problematic is the amount of detail provided in the QWR by the Plaintiffs concerning their request for information about their payments, which simply calls for a "full accounting and validation of the alleged amount owing on this account." Some courts have held that such blanket accusations that do not

identify the alleged errors, fail to satisfy the detail required by RESPA and, as such, is not a proper QWR and thus does not require a response. *See Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 897-98 (E.D. Mich. 2011), *Roller v. Litton Loan Servicing*, No. 10-13847, 2011 WL 2490597, at *4 (E.D. Mich. June 21, 2011) (QWR held to be detailed response due to a list of almost 190 questions to be answered by servicer). However, Plaintiffs did explicitly request information, so Nationstar was obligated to respond. Accordingly, the only question remaining is whether or not the response was adequate under the statute.

With respect to the adequacy of the response to the first letter, Nationstar's response was appropriate, considering they were responding to rather vague allegations that the "mortgage payments had not been properly credited, amortized and calculated." [45-6; 45-8]. Significantly, the deposition of Plaintiff Ian Stewart states that he knew about dates on his bank statements that set forth times when money was withdrawn from the bank, and that this record from the servicer showed missing payments. However, his letter to Nationstar fails to go into detail concerning what error/s Plaintiffs believed were made or when they occurred. [45-5 at 33-35]. Nationstar's response to this vague request was adequate, providing a full accounting that included a copy of the payment history transaction report which detailed "amounts, dates and descriptions of any fees accessed, [and] any

payments received, and any disbursements made." [45-7 at 19-25]. Considering the vague statement given by Plaintiffs that failed to identify any disputed payments for Defendants to investigate, the reply was appropriate. *See Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *10 (S.D. Ohio Aug. 5, 2014). The second letter contained an identical QWR request, and Defendants once stated that the loan had been reviewed and found to comply with federal regulations, and Nationstar provided a payment history transaction report and late fee breakdown, amongst other documents, once again making an adequate response. [45-9].

Because the uncontroverted record establishes that Defendants adequately responded to the two QWR letters that are entered into the record, there is no need to address the issues of damages. Based on the facts most favorable to the Plaintiff, these responses are plainly adequate under statutory requirements, and thus summary judgment in regards to Claims IV and VIII are granted for the Defendants.

### b. *Violation of TILA: Count VI § 1641(f)(2)*

In Count VI of their Complaint [1], Plaintiffs state a claim under Truth in Lending Act (TILA) against Defendant Fannie Mae, alleging that they failed to comply with the statute and are responsible under TILA for the failure of servicer

Nationstar to provide the name, address, and telephone number of the owner of the mortgage or the servicer master of the obligation. Defendant argues this alleged violation of TILA is time barred under the applicable statute of limitations.

The statute of limitations for claims arising under 15 U.S.C. § 1641(f)(2) provides that an action must be commenced within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e).  For an action brought pursuant to 15 U.S.C. § 1641(f)(2), this means that a claim must be commenced within one year from the time that a servicer fails to provide, when requested, the name, address, and telephone number of the owner of the mortgage or the master servicer of the obligation. *See Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009); *Kassem v. Ocwen Loan Servicing, LLC*, No. 14-11143, 2015 WL 5559906, at *11 (E.D. Mich. Sept. 18, 2015), citing 15 U.S.C. §§ 1640(e), 1641(f)(2).

In this case, Plaintiffs sent the initial letter to Nationstar on October 31, 2011, and the alleged insufficient response was returned to Plaintiffs on November 18, 2011. [45-6; 45-7]. Plaintiffs did not file a complaint against Fannie Mae for TILA violations until March 25, 2013, concededly in violation of the statute of limitations. [1].

In the Sixth Circuit, equitable tolling is available for § 1640(e), which results in "[a] limitations period [that] run[s] from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Thielen.*, 671 F. Supp. 2d at 953, citing *Borg v. Chase Manhattan Bank USA, N.A.*, 247 Fed.Appx. 627, 635 (6th Cir.2007) (quoting *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir.1984)). In order to have equitable tolling apply to a claim, a Plaintiff must show:

> (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009), citing Hamilton County Bd. of Comm'rs v. NFL, 491 F.3d 310, 315 (6th Cir.2007) (quoting Dayco Corp. v. *954 Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir.1975)).

Without directly arguing for equitable tolling, Plaintiffs seeks application of the doctrine in their case because of asserted insufficient replies from Nationstar concerning the master servicer of their account. [47 at 24]. However, there are no facts on the record to support a finding of equitable tolling; indeed there are no arguments presented by Plaintiffs to establish any of the required elements to activate equitable tolling, such as wrongful concealment.

Moreover, even if equitable tolling were to be applied here, the statute of limitations would still be exceeded because, according to the record, the date that

Mr. Stewart learned of the fraud alleged in the TILA complaint, failure to identify the master servicer, was the same day that Nationwide responded, November 18, 2011 and the complaint was not filed until March 25, 2013, which is still over the one year time limit. This is supported by the record in Ian Stewart's deposition where he stated that none of the answers from Nationstar provided him sufficient information to identify the servicer of the loan, and that he was never satisfied with their responses, and thus stopped making his mortgage payments. [45-5 at 29]. This establishes that, at the date of the first response from Nationstar, Mr. Stewart was not satisfied and was aware of what he alleges is a violation of TILA § 1641(f)(2).

There is no dispute of material fact in the record of this case. Consideration of the facts in the light most favorable to the Plaintiffs, establish that, as a matter of law, Plaintiffs failed to file their complaint against Fannie Mae for a violation of § 1641(f)(2) within one year statute of limitations. Accordingly, summary judgment with respect to Claim VI is granted to Defendants.

### c. *Violation of TILA: Count VII § 1641(g)*

In Count VII of their Complaint [1], Plaintiffs state a claim under TILA against Defendant Fannie Mae alleging that Fannie Mae failed to alert Plaintiffs in writing when the interest in the loan was transferred as required by 15 U.S.C. §

1641(g)(1). Defendants argue this alleged violation of TILA is time barred under the applicable statute of limitations, and point that the record shows that Nationstar did in fact provide information to the Plaintiffs when they became a servicer of the loan.15 § U.S.C. 1641(g).

§ 1641(g)(1) creates a duty for the "creditor that is the new owner or assignee of the debt" to notify the borrower in writing, no later than thirty days "after the date on which a mortgage loan is sold or otherwise transferred or assigned" information that includes:

> **(A)** the identity, address, telephone number of the new creditor;
> **(B)** the date of transfer;
> **(C)** how to reach an agent or party having authority to act on behalf of the new creditor;
> **(D)** the location of the place where transfer of ownership of the debt is recorded; and
> **(E)** any other relevant information regarding the new creditor. 15 U.S.C.A. § 1641.

This section was added to the TILA on May 20, 2009, when the Helping Families Save Their Homes Act of was signed into law. Public Law 111-22, 123 Stat. 1632; Truth in Lending, 74 FR 60143-01. The new provision in TILA became effective "immediately upon enactment on May 20, 2009" and made mortgage loans sold or transferred on or after the enactment date to become subject to the provision. Truth in Lending, 74 FR 60143-01.

In order to have a successful claim under § 1641(g)(1), Plaintiffs must ensure that the Defendant's acquisition of the loan occurred *after* the enactment date of May 20, 2009; if not, then an evidentiary default awards Defendant's summary judgment on the claim. *Humphreys v. Bank of Am.*, 557 F. App'x 416, 423-24 (6th Cir. 2014). In this case, the record shows that Fannie Mae became owner of Plaintiff's loan on June 24, 2005, which was revealed in writing to Plaintiff's in Nationstar's letter to Plaintiffs on November 18, 2011. [45-7 at 4]. This clearly shows that Fannie Mae was transferred ownership of the loan well before the act was created, and as such the claim against Fannie Mae should be dismissed. The only Defendant whose actions falls after the enactment of the provision are Nationstar, who became servicer of the loan on September 30, 2009. However, Plaintiffs admit that they received information regarding this transfer in Mr. Stewart's deposition, saying that when the transfer took place from Flagstar to Nationstar, they received a letter stating that Nationstar would be handling the mortgage payments immediately. [45-5 at 10-11]. Therefore, Nationstar met the requirements of the provision and did not violate it.

Additionally, the TILA claims against Defendants under § 1641(g)(1) are also time barred under TILA's statute of limitations as detailed under § 1640(e). For the reasons explained above regarding the §1641(f)(2) claim, the § 1641(g)(1)

claim is also barred on timeliness grounds given that more than one year has passed since the alleged violation of the act. Equitable tolling is also not available for this claim because there is no evidence of wrongful concealment and that Plaintiffs were fully aware of the transfers at issue when Nationstar informed Plaintiff of all transfers regarding their loan in their letter November 18, 2011 and the complaint in this case was not filed until March 2013.

Consideration of the facts in the light most favorable to the Plaintiffs establish that, as a matter of law, Plaintiffs § 1641(g)(1) claims fail because any claim would be time barred and Fannie Mae acquired ownership of the loan before the statutory provisions at issue in this claim were enacted. Accordingly, summary judgment with respect to Claim VII is granted to Defendants.

## <u>CONCLUSION</u>

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [45] is **GRANTED**.

**SO ORDERED**.

s/Arthur J. Tarnow<br>
Arthur J. Tarnow<br>
Senior United States District Judge

Dated: September 30, 2015